## WARD *v.* COLE, Adm'x.

Absence from the State, to prevent the statute of limitations from running as provided by sec. 9, chap. 181, Rev. Stat., must be such that service of legal process cannot be made upon the party so as to obtain judgment against him personally.

If a person leaves this State temporarily, but his absence is such that service of process cannot be made upon him, the statute of limitations will not run during his absence, notwithstanding he may leave property in the State against which judgment could be obtained.

Where the defendant's intestate left this State with his family, on a voyage at sea, expecting to be absent for three years, leaving property in this State in the care of his father-in-law, but never returned, having died before the expiration of the three years—*held*, that his absence was such as to prevent the statute from running.

ASSUMPSIT, on a promissory note signed by the defendant's intestate, and described in the declaration, and dated February 13, 1847, at Ashburnham, Massachusetts, where the payee then resided and has ever since resided.

Plea, the general issue, with a brief statement, that the defendant's intestate died April 15, 1853, and that the cause of action did not accrue at any time within six years next preceding the said 15th day of April, 1853.

An issue was joined to the court.

It was admitted that the action was barred by the statute of

limitations, unless the statute was prevented from running during a portion of the time by the following facts, which were proved:

Previous to July 5, 1851, the intestate resided in Rindge, in said county of Cheshire, was the owner of considerable real estate there; had been keeping house, and was the owner (subject to a mortgage) of the dwelling-house in which he lived. Amos Cutler, the father-in-law of the intestate, occupied with his wife a portion of the house. The intestate also owned and left at Rindge considerable other real estate, out of which the debt sued for in this action could have been at any time secured.

On the said 5th day of July he sailed on a whaling voyage, as master of the vessel in which he sailed, having before been engaged in similar pursuits. He died on the 15th day of April, 1853.

When he went on his voyage he left all the furniture in his house, as when he occupied it, leaving directions to have it remain so till his return. He left his farm and stock in the charge of said Cutler, and gave him authority to receive certain money for him, and to dispose of it. All his arrangements were made with a view to returning as soon as his voyage was completed, and he declared his intention to return. He was expecting that the voyage would last about three years, and his outfit and preparations were made with reference to an absence of that length. His wife and child went with him. Cutler kept his house open by his directions, and for him, all the time, and in readiness to receive him on his return. It was admitted that the demand had been properly exhibited to the defendant before suit. The foregoing facts are found by the court, and the plaintiff's damages assessed at the sum of $956.73. Judgment to be rendered for the plaintiff, or defendant, as the Supreme Judicial Court shall order on the foregoing facts.

*Cushing*, for the defendant.

1. During the time of the absence of Cole, the intestate, his home was at Rindge, and his house there was his "usual place of abode," where a legal service might have been made. Comp. Stat., ch. 194, § 2; *Sears* v. *City of Boston*, 1 Metcalf 250.

2. A judgment obtained against him, after a service by leaving a summons at his "*usual place of abode*," would have been binding on him. *Douglass* v. *Forrest*, 4 Bing. 686 ; *Brequet* v. *McCarthy*, 2 Barn. & Adol. 951 ; *Hall* v. *Williams*, 6 Pick. 232.

3. As during all the time the defendant's intestate was not so absent but that a service might have been made on him, the statute continued to run. *Gilman* v. *Cutts*, 7 Foster 348.

*Wheeler & Faulkner*, for the plaintiff.

The question raised in this case is, was the domicil and usual place of abode of the debtor in this State from July 5, 1851, to February 13, 1853, so that legal service could have been made upon him ?

In the case of actual residents in the State, two kinds of service only of original writs are authorized by the statute ; actual personal service upon the debtor, either by arrest, by reading, or by delivering to him a copy or a summons, and service by leaving a copy or summons at his usual place of abode.

In the case of those whose actual and legal residence is in another State, four methods of service are provided, after an attachment of the debtor's goods or estate in this State. A copy of the writ and officer's return may be given to him in person, or left at his usual place of abode, out of this State, or left with his agent, lawfully authorized to appear for him, or with his tenant on or near the land attached.

A careful examination of sections 5 and 6, chap. 194, Comp. Laws, will show that in neither of the last mentioned methods is service authorized upon citizens of this State who are temporarily absent.

It is admitted that the debtor in this case had, by his absence, acquired no domicil in another State ; that his absence was temporary, and that his domicil was for certain purposes within this State. If, then, service could have been made upon him, it must have been made in one of the modes prescribed in sections 2 and 3, chap. 194, Comp. Stat. A writ could not have been read, nor a summons or copy delivered to him. Could service

Ward v. Cole.

have been made by leaving a summons or copy at the house formerly owned by him in Rindge ? This would seem to depend upon the question, was that house, during his absence, his usual place of abode ?

In *Gilman* v. *Cutts*, 7 Foster 348, the debtor hired a house in Exeter, in which he resided four or five months in the year ; in which his family resided the whole of the year, and from which he was never absent for more than a fortnight at a time.

But in this case a very different state of facts exists. The debtor retained a house in this State, it is true, to which, at the expiration of his voyage, he intended to return, but he took his family with him, intending to be absent three years, and never returned.

· If the mere intention of returning after a period of years to a house formerly occupied, constitutes it, during all one's absence, his usual place of abode, where is the limit ? Can a man be absent from the State ten, fifteen or twenty years, with no intention of returning within that time, but with the intention of returning at the expiration of that time, and still retain his usual place of abode at his former residence ? If not, what distinction in principle can be shown between such absence, and an absence of three years under similar circumstances ?

The fact, that from the nature of his business the debtor acquired no fixed place of abode in another State, can have no operation in determining this question, since, otherwise, a debtor might make a pleasure tour of six years in duration, and still retain his usual place of abode at his former residence.

Nor can it affect this case that the debtor left property in this State which might have been attached by the common and ordinary process of law ; that a notice by publication might have been ordered by the court, and a judgment afterwards rendered, which might have been satisfied out of the property so attached. To hold that this circumstance would operate to keep the statute of limitations running, would be in effect to decide that even-if the debtor is an actual and legal inhabitant of another State, but has property within this State, the statute will continue to

run, notwithstanding his absence ; and that the omission in the present statute of the proviso in the act of June 30, 1825, in relation to the leaving of property in this State, has no significance.

In order that the absence of the debtor may not operate to prevent the statute of limitations from running, it must be of such a character and under such circumstances that personal service could have been made upon him ; such service as would be held to be valid and effectual, if, failing to collect his debt in this jurisdiction, he should be obliged to resort to the courts of another State for his remedy ; such service as would give the courts of this State complete jurisdiction, as well of the person as of the property.

Such a service in this case was rendered impossible by the debtor's " absence from and residence out of the State," from July 5, 1851, to February 13, 1853.

EASTMAN, J. The question presented by the state of facts found by the court below is this : Did the statute of limitations continue to run during the absence of the defendant's intestate, in the manner set forth in the case ?

In *Gilman* v. *Cutts*, 3 Foster 376, it was held, that under the statute of limitations of this State, any and every absence from the State, whether temporary or otherwise, which is such that the creditor cannot, during the same, make legal service upon the debtor, must be reckoned in computing the time to be deducted from that between the maturity of the note and the commencement of the suit.

And again, when the same case was before the court, as reported in 7 Foster 348, where it appeared that the defendant hired a house in Exeter, in this State, which his wife occupied, and he himself worked in Massachusetts, coming home Saturdays and returning Mondays through the summer season, and remained at home during the winter, it was held that the absence was not such that service could not be made upon him, and that therefore the time of his absence was not to be excluded in computing the six years.

Under these decisions, which have put a construction upon the statute of limitations of this State, the question whether the absence be such as to prevent the statute from running, is made to depend upon the fact whether a good service of process can be made upon the defendant during the alleged absence. A person may not, by his absence, lose his domicil in a State, and he may have it for the purpose of voting, and probably for other purposes, without having a usual place of abode, within the meaning of the statute, for the service of legal process. But while so absent no service can be made upon him, and the statute does not run ; and the time of the absence is to be deducted from the six years.

And such was the character of the absence in this case. The domicil of the defendant was not lost, but he and his family had left the State, expecting to be absent for three years, and during his absence he had no usual place of abode here. Personal service could not be made upon him, and no service, indeed, which could give the court jurisdiction to render a judgment against him personally. A summons left with his father-in-law could not reach him, and a judgment taken on such a service would be a judgment without service.

The position of the case is not changed by the fact that the defendant's intestate at the time of his departure left property in this State. Under our former statute of limitations, a residence out of a State did not prevent the statute from running, if the defendant left property attachable in the State. N. H. Laws, 1830, p. 77. In the present statute the provision in regard to leaving property in the State is not embraced, so that residence out of the State prevents the statute from running, whether property be left or not. Rev. Stat., chap. 181, § 9.

Had the plaintiff seen fit to have attached the defendant's real estate during his absence, and given notice by publication under the order of the court, he might thus have obtained a judgment against the defendant's property. Comp. Stat., chap. 198, § 5. Or he might, perhaps, have caused a copy to be left with Cutler, and thus obtained judgment against the property. Comp. Stat.,

chap. 194, § 5. But such an attachment and notice is not that service contemplated by the authorities. It must be personal, or such as to bring the notice home to the defendant. It must either be by arrest, or by delivering to the defendant in hand a summons, or leaving it at his " usual" place of abode, as well as his " last" place; where, under ordinary circumstances, he will receive it before court.

No such personal service could have been made upon the maker of this note during his voyage. His absence, though temporary, was such that service could not be made upon him; and consequently the time of the absence should be deducted from the six years. That being done, the note was not barred by the statute, and

*Judgment should be entered for the amount found due by the court below.*